# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AMERICAN SOCIETY OF ANESTHESIOLOGISTS, AMERICAN COLLEGE OF EMERGENCY PHYSICIANS, and AMERICAN COLLEGE OF RADIOLOGY, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.* <br><br> *Defendants*. | Case No. _____ |

## DECLARATION OF CHRISTOPHER E. YOUNG, MD

I, Christopher Young, MD declare as follows:

1. I am a current member of the American Society of Anesthesiologists (ASA) and have been a member of ASA for approximately 30 years.

2. I am currently a licensed physician in good standing in Tennessee. I received my Doctor of Medicine degree from Georgetown University in 1985. I completed my residency at SUNY Health Science Center, Syracuse in 1989. I have 30 years of experience as a board certified anesthesiologist.

3. I am a physician anesthesiologist at Anesthesiology Consultants Exchange (ACE), which is located in Chattanooga, Tennessee. I have been employed by ACE since 1991.

4. ACE began billing insurers for my anesthesia services in 1991 and continues to bill for my services today. ACE receives payments directly from public and private insurers. I am a shareholder at ACE, and my income is directly dependent on ACE to bill and collect

payments from private and public health insurers.

5. I provide anesthesia services at Erlanger Health System (EHS) in Chattanooga, Tennessee. In the course of my employment, I render anesthesia services to participants, beneficiaries, and enrollees (collectively, "patients") covered by a group health plan or a health insurance issuer offering group or individual health insurance coverage (collectively, "insurers").

6. I have entered into contractual arrangements with some, but not all, insurers as an "in-network" provider.

7. I also provide "out-of-network" anesthesia services to patients at EHS's hospital and ambulatory surgical center that are within the network of the patient's insurer. I expect to continue providing such services after the implementation of the No Surprises Act.

8. It is my understanding that the No Surprises Act created an independent dispute resolution ("IDR") process to determine the amount of reimbursement that insurers must pay for certain out-of-network items or services.

9. I am confident that at least some of the claims for out-of-network anesthesia services that I render at the in-network, EHS hospital and ambulatory surgical center will be adjudicated by the certified IDR entity pursuant to the No Surprises Act.

10. It is my understanding that the interim final rule entitled, "Requirements Related to Surprise Billing; Part II," 86 Fed. Reg. 55,980 (Oct. 7, 2021) (the "October IFR"), which implements the IDR process, requires the certified IDR entity to "select the offer closest to the qualifying payment amount unless the certified IDR entity determines that credible information submitted by either party ... clearly demonstrates that the qualifying payment amount is materially different from the appropriate out-of-network rate, or if the offers are equally distant from the qualifying payment amount but in opposing directions." *Id.* at 56,104, 56,116, 56,128.

11. I am aware that the "qualifying payment amount" for anesthesia services is calculated in accordance with the No Surprises Act and the policies set forth in the interim final rule entitled, "Requirements Related to Surprise Billing; Part I," 86 Fed. Reg. 36,872 (July 13, 2021). The qualifying payment amount strongly favors insurers and is significantly lower than my current reimbursement rates for providing out-of-network anesthesia services. In other words, the qualifying payment amount is not reflective of the fair market value for my out-of-network anesthesia services.

12. Had the October IFR not established a "rebuttable presumption" in favor of the qualifying payment amount, certified IDR entities could have freely examined the statutory factors delineated in the No Surprises Act codified at 42 U.S.C. § 300gg-111(c)(5); 29 U.S.C. § 1185e(c)(5); 26 U.S.C. § 9816(c)(5). Consideration of these factors is critical to determining adequate and fair reimbursement for out-of-network anesthesia services.

13. Because the October IFR restricts the certified IDR entity's ability to consider these statutory factors by establishing a rebuttable presumption in favor of the qualifying payment amount, the October IFR will adversely impact the out-of-network payments that ACE receives for the anesthesia services that I provide to patients at EHS's hospital and ambulatory surgical center. This will, in turn, will negatively impact our income at ACE and diminish our ability to provide the level of high quality anesthesia services our patients currently receive.

14. Further, I expect that the October IFR's rebuttable presumption will adversely affect ACE's negotiating position with insurers because the October IFR's rebuttable presumption heavily favors insurers over providers. Because the October IFR's will result in significantly reduced out-of-network payments, I anticipate that insurers will leverage the rebuttable presumption to reduce ACE's in-network contracted rate with insurers.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief. Executed on December 22, 2021, in Chattanooga, Tennessee.

_____
Christopher E Young, MD          12/22/2021

{D0979693.DOCX / 6 }