# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AMERICAN SOCIETY OF ANESTHESIOLOGISTS, AMERICAN COLLEGE OF EMERGENCY PHYSICIANS, and AMERICAN COLLEGE OF RADIOLOGY,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*<br><br>*Defendants*. | Case No. _____ |

## DECLARATION OF LAUREN GOLDING, MD

I, Lauren Golding, MD declare as follows:

1. I am a current member of the American College of Radiology ("ACR"). I have been a member of ACR since 2008.

2. I am licensed by the State of North Carolina as a physician, and I am in good standing. I am currently certified by the American Board of Radiology.

3. In 2006, I received a Doctor of Medicine degree from Duke University School of Medicine. I completed my medicine residency at Wake Forest University School of Medicine in 2011.

4. I have been practicing medicine in the field of radiology for over 15 years.

5. Currently, I serve as Chief Executive Officer at Triad Radiologists, which is located at 3010 Trenwest Dr, Winston Salem, NC. Triad Radiology Associates contracts with hospitals, hospital outpatient departments, outpatient imaging facilities, and critical access

hospitals in the Winston-Salem area for the provision of radiology treatment and care.

6. I receive a salary and profit distributions from Triad Radiology Associates. The profit distributions that I receive are dependent, in large part, upon the revenues that Triad Radiology Associates receives from patients and insurance companies.

7. Triad Radiology Associates transmits the bills for my services to the insurance companies of the patient, and Triad Radiology Associates directly receives payments from these insurance companies. A radiologist who interprets any given examination is unaware whether a patient is in-network or out-of-network. Therefore, their service is equivalent.

8. Some of the patients that I treat are covered by a group health plan or a health insurance issuer offering group or individual health insurance coverage (collectively, "insurers").

9. I have entered into contractual arrangements with some, but not all, insurers as an "in-network" provider.

10. On average, I treat approximately 11 "out-of-network" patients per month. This includes patients who receive my out-of-network services at hospitals, hospital outpatient departments, and critical access hospitals that are within the network of the patient's insurer. Accordingly, some of my services will be subject to the No Surprises Act after its implementation.

11. I am aware that the United States Department of Health and Human Services, the United States Department of Labor, the United States Department of the Treasury, and the United States Office of Personnel Management recently published an interim final rule ("IFR") governing an independent dispute resolution ("IDR") process to determine how much reimbursement an insurer must pay for certain out-of-network items or services. Under this IFR, the entities determining the amount of reimbursement must "presume that the [qualifying

payment amount] is an appropriate payment amount" unless "credible information" is submitted by the provider or insurer "clearly demonstrating" that the qualifying payment amount is "materially different from the appropriate out-of-network rate," unless the reimbursement offers submitted by the provider and the insurer are equally distant from the qualifying payment amount but in opposing directions. Requirements Related to Surprise Billing; Part II, 86 Fed. Reg. 55,980, 55,995 (Oct. 7, 2021).

12. It is my understanding that the "qualifying payment amount" is not reflective of the fair market value for out-of-network radiology care. Accordingly, the IFR's "rebuttable presumption" in favor of the qualifying payment amount will result in significantly lower reimbursement rates than I am currently receiving.

13. Because certified IDR entities have limited capability to consider other statutory factors (codified at 42 U.S.C. § 300gg-111(c)(5); 29 U.S.C. § 1185e(c)(5); 26 U.S.C. § 9816(c)(5)), the "rebuttable presumption" will tilt IDR deliberations in favor of the insurer. If certified IDR entities were able to consider these factors, I would be better positioned to receive adequate and fair reimbursement for my out-of-network services.

14. Therefore, the IFR's "rebuttable presumption" in favor of the qualifying payment amount will adversely impact the out-of-network payments that Triad Radiology Associates receives for my services that are subject to the No Surprises Act. Because my profit distributions that I receive from Triad Radiology Associates dependent, in large part, upon the revenues from insurers, the IFR will adversely impact my profit distributions.

15. Moreover, I reasonably believe that the IFR's "rebuttable presumption" will empower insurers to reduce Triad Radiology Associates' in-network contracted rate with insurers or refuse to contract with me as an in-network provider. Triad Radiology Associates has

already received correspondence from Blue Cross Blue Shield of North Carolina demanding an immediate 10% reduction in our contracted rates, which were previously negotiated in good faith. This letter cites the IFR as justification to "warrant a significant reduction in (our) contracted rates with Blue Cross NC" and warns of additional rate reductions once the qualifying payment amount is established. The letter states that if Triad Radiology Associates does not accept the immediate rate reduction, our contract will be "quickly terminated".

 I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief. Executed on December 21, 2021, in Winston Salem, North Carolina.

| _____ | 12/22/21 |
|---|---|
| Lauren Golding, MD | Date |